UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARK WARREN,

                                        Plaintiff,

v.

WELLS FARGO & CO., WELLS
FARGO BANK, N.A., et al.

                                        Defendants.

Case No.: 3:16-cv-2872-CAB-(NLS)

**ORDER ON REQUEST FOR
PRELIMINARY INJUNCTION
[Doc. No. 10]**

On January 27, 2017, Plaintiff filed an *Ex Parte* Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction to restrain Defendants from foreclosing on and selling the real property located at 5934 Portobelo Court in San Diego, California. [Doc. No. 10.] A hearing on Plaintiff's TRO Application was held on February 16, 2017 [Doc. No. 18.] Following the TRO hearing, the Court issued an Order to Show Cause on the Preliminary Injunction. [Doc. No. 30.] Defendants filed their response in opposition to Plaintiff's request [Doc. No. 34] and Plaintiff filed his reply [Doc. No. 36]. A hearing on the request was held on June 8, 2017. [Doc. No. 38.]

## I.    Background

In 1999, Plaintiff obtained a $225,000 mortgage from an unidentified source to purchase his current residence (the "Property"). In 2002, Plaintiff obtained a new negative amortization mortgage loan on the property from Countrywide Home Loan. Inc., in the

amount of $456,000. On November 13, 2006, Plaintiff and World Savings Bank, a Federal Savings Bank, entered into an Adjustable Rate Mortgage Note, Pick-a-Payment Loan on the Property for $456,000. [Doc. Nos. 10-3 at 12-26; 34-1 at 18-23.[1]]

In 2009, Plaintiff obtained a loan modification from Wachovia[2] that reduced the mortgage loan amount to $435,984.89 and allowed Plaintiff to make interest only monthly loan payments through to May 15, 2015. [Doc. No. 10-3 at 10-11.] The modification also provided that on May 15, 2016, Plaintiff would begin making monthly principal and interest payments on the mortgage in the amount of $2,244.24 for the remainder of the loan, with an interest rate fixed at 4.978 per cent. [*Id.*]

Following its merger with Wachovia, Wells Fargo Bank, Southwest, N.A.[3] took over the mortgage on the Property. Wells Fargo Bank Southwest, N.A later merges with Wells Fargo Bank, N.A. ("Wells Fargo) who become successor in interest. [Doc. No. 34-1 at 10-16.]

In the Fall of 2013, Plaintiff sought a loan modification with Wells Fargo due to health issues and a resulting limited ability to work. On November 6, 2013, Defendants sent Plaintiff a letter offering Plaintiff a loan modification if he successfully completed a Trial Payment Period. [Doc. No. 10-3 at 25-28.] As part of the modification process the parties agreed to enter into a trial period whereby Plaintiff would make three monthly payments of $1,863.56.[4] After successfully completing the trial period, Plaintiff asserts that the loan modification paperwork Wells Fargo created did not reflect the earlier agreed upon terms and conditions. The modification Wells Fargo offered Plaintiff would have

---

[1] Document numbers and page references are to those assigned by CM.ECF for the docket entry.
[2] On December 31, 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB. [Doc. No. 34-1 at 10-13.]
[3] On November 1, 2009, Wachovia merged into and became a division of Wells Fargo Bank, Southwest, N.A. Wells Fargo Bank, N.A., in turn becomes successor by merger with Wells Fargo Bank Southwest. N.A. [Doc. No. 34-1 at 14-16.]
[4] The Court notes that the trial payment amounts contained in the terms and conditions page attached to the November 6, 2013, letter are identical to those Plaintiff asserts he paid.

resulted in a monthly payment of $1,486.95, interest rate of 2.728 % for years 1-5 of the loan; a monthly payment of $1,715.22, interest rate of 3.728 % for year 6 of the loan; a monthly payment of $1,954.60, interest rate of 4.728 % of year 7; a monthly payment of $2,203.27 at an interest rate of 5.728%; culminating in a monthly payment of $2,367.78, interest rate of 6.375% for years 9-40.[5] [Doc. No. 34-1 at 29-41.] Having not been offered a 2.5 per cent fixed rate loan with monthly payments of $1,863.56, Plaintiff refused the modification.

It appears that following the failed loan modification Plaintiff made his monthly mortgage payment. But, in the Spring of 2016, a dispute arose regarding whether Plaintiff made the required mortgage loan payments.[6]

On September 20, 2016, Plaintiff received a Debt Validation Notice ("DVN") from Clear Recon Corp ("Clear Recon") that he owed Wells $446,269.75. [Doc. No. 10-3 at 29-30.] On September 29, 2016, in response to the DVN, Plaintiff's attorney, Mr. Reed, sent Clear Recon a cease and desist letter. [*Id.* at 31-32.] On the same day, Mr. Reed also contacted Wells Fargo, informing them that Plaintiff disputed the debt and requesting it provide proof of debt. [Doc. No. 10-2 at 8-11.] Mr. Reed did not receive a response.

On October 4, 2016, Plaintiff received a Notice of Default ("NOD") that included "T.S. Number: 049020-CA." [Doc No. 10-3 at 34-35.] On October 11, 2016, Plaintiff's counsel sent Wells Fargo a letter disputing the default and stating that Plaintiff had made his monthly mortgage payments. [Doc No. 10-2 at 13.] Later that same month, Plaintiff filed suit in the Superior Court of the State of California of San Diego asserting a myriad of claims associated with Defendants conduct related to the mortgage loan on the Property

---

[5] Defendants have offered an exhibit that it declares is a copy of the loan modification that if offered Plaintiff on May 20, 2014. [Doc. No. 34-1 at 29-41.]

[6] Wells Fargo declares that Plaintiff submitted a loan modification application in 2016. [Doc. No. 34-1 at ¶ 14.] In support, Wells Fargo offers a June 13, 2016 letter, it asserts it sent Plaintiff denying his application for loan modification under the Proprietary Step Rate Program because his income was too low. [*Id.* at 50-53.] The letter suggest a short sale as an option. [*Id.*]

and the NOD. [Doc. No. 1-2.] On November 22, 2016, Wells Fargo removed the action to federal court. [Doc. No. 1.]

On December 1, 2016, Plaintiff's check for $2,715.75, the amount Plaintiff asserts was his monthly mortgage payment for November 2016, was returned by Wells Fargo because they were declining payment. [Doc. No. 10-3 at 37.] During December 2016 and January 2017, Plaintiff's counsel sent multiple letters to Wells Fargo's counsel, Mr. Newman, disputing the debt and requesting a response to the Qualified Request Letter ("QRL"). [Doc. No. 10-2 at 17-18, 20, 29-47.]

In mid-January 2017, Plaintiff received two separate Notices of Sale, one setting January 19, 2017 as the date of the public auction of the Property, the second setting January 31, 2017 as the auction date. [Doc. No. 10-3 at 39, 41-51.] In response to the notices Plaintiff filed an *Ex Parte* Application for a Temporary Restraining Order and Preliminary Injunction and Attorney Fees. [Doc. No. 10.] Since the filing of the TRO application Plaintiff has received additional Notices of Sale.[7]

A hearing on Plaintiff's TRO Application was held on February 16, 2017, where the undersigned enjoined Defendants from selling the Property for 120 days. [Doc. No. 18.] Subsequently, the undersigned has extended the TRO three times until its expiration on September 27, 2017. [Doc. No. 40, 46, 52.]

On May 2, 2017, the Court issued an Order to Show Cause regarding the Request for Preliminary Injunction and setting a June 8, 2017, hearing date. [Doc. No. 30.] Defendants submitted their response in opposition [Doc. No. 34] and Plaintiff filed his reply. [Doc. No. 36.] At the June 8, 2017 hearing Plaintiff was represented by Ms. Mackenzie Colt and Mr. Fred Hickman appeared for Defendants, neither of whom had actual or detailed knowledge of the case, Mr. Newman or Mr. Reed were not present. [Doc.

---

[7] Defendant Clear Recon set a sale date for May 15, 2017, that was later postponed until July 3, 2017. [Doc. No. 36 at 57, 59.] The sale was again postponed until September 25, 2017. [Doc. No. 51 at 2:9-10.] As of the date of this order the sale of the Property has not occurred.

No. 38.]  On October 3, 2017, Plaintiff, aware that the Court would be issuing an order on the Preliminary Injunction in the near future, filed "Supplemental Facts in Support of the Court Granting an Injunction."  [Doc. No. 58.]

## II.    Legal Standard

Injunctive relief may only be granted upon a showing of "irreparable injury and the inadequacy of legal remedies."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. Univ. of So. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994).  Under the traditional standard in order to obtain a preliminary injunction the party seeking relief must demonstrate; (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

Courts within the Ninth Circuit can also apply a variant of this standard known as the "sliding scale" which provides "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits- then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, at 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013).

## III.    Discussion

Plaintiff argues that he will suffer irreparable injury if injunctive relief is not granted, that he has a reasonable chance of success on the merits, that an injunction would be in the public interest, and the balance of hardships weigh in his favor.  [Doc. No. 10-1 at 10-21.] Regarding the likelihood of success, Plaintiff asserts that the NOD is illegal and otherwise improper under California Civil Code sections 2923.5 and 2924 *et seq.*, and Defendants created a false NOD situation.  [*Id*. at 11-19.]

In opposition, Defendants argue that there is no likelihood of success on the merits. [Doc. No. 34 at 7-17.]  In support of this position they make a number of assertions.  First,

Defendants argue that the basis for the preliminary injunction is divorced from the underlying allegations and claims in the First Amended Complaint. [*Id.* at 7-8.] Second, they assert that the basis for Plaintiff's injunctive relief fail as a matter of law because they are preempted by federal law. [*Id.* at 8-9.] Finally, they argue Plaintiff's long history of applying for loan modifications defeats his assertion that he is entitled to injunctive relief and that Plaintiff did in fact default on his mortgage payments. [*Id.* at 9-17.]

### a. Likelihood of success

Plaintiff argues that he is entitled to relief by virtue of Defendants' failure to adhere to the requirements of California law with respect to the foreclosure because they have no right to claim a default under California Civil Code § 2924 et seq. In response, Defendants argue that Plaintiff cannot show probable success on the merits because Plaintiff's application is based on alleged violation of section 2923.5 of the civil code, yet such a claim is "nowhere to be found in the FAC." [Doc. No. 34 at 7:24.] The Court finds this argument unavailing. In *Pacific Radiation Oncolocy LLC v. Queen's Medical Center*, the Ninth Circuit recently held:

> there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.' Absent that relationship or nexus, the district court lacks authority to grant the relief requested.

810 F.3d 631, at 636 (9th Cir. 2015). Here, Plaintiff's preliminary injunction application has a sufficient nexus to the allegations in his complaint. The FAC asserts that the NOD was improper, seeks to cancel the NOD, and requests an accounting from Defendants of the mortgage payments he allegedly still owes. Moreover, the application and FAC are supported by the same factual allegations. Therefore, the Court finds that it can properly consider both grounds upon which Plaintiff moves for the injunction.

California Civil Code section 2923.5 imposes several prerequisites before the filing a NOD upon a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent. CAL. CIV. CODE § 2923.5. Section 2923.5(a)(1) provides that "[a] mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after the initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g). *Id.* § 2923.5(a)(1). Paragraph (2) provides that "[a] mortgagee, trustee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *Id.* § 2923.5(a). Under subdivision (g), "[a] notice of default may be filed . . . when a mortgagee, trustee, beneficiary, or authorized agent has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred despite the due diligence of the mortgagee, trustee, beneficiary, or authorized agent." *Id.* § 2923.5(g). Failure on the part of the mortgagee, trustee, beneficiary, or authorized agent fails to comply with section 2923.5 means "there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed." *Mabry v. Superior Court,* 185 Cal. App. 4th 208, 223 (2010). Such a violation results in the "postpone[ment of] the sale until there has been compliance with section 2923.5." *Id.* California Civil Code section 2924 enumerates the requirements that need to be followed for filing a notice of default, including what information must appear in the NOD itself. CAL. CIV. CODE § 2924(a)-(c). "Compliance with this provision necessarily requires that the beneficiary provide accurate information in response to an inquiry by the trustor." *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1188 (C.D. Cal. June 21, 2011) (quoting *Anderson v. Heart Fed. Sav. & Loan Ass'n,* 208 Cal. App. 3d 202, 216 (1989)).

The parties' dispute whether Plaintiff is in default and whether Plaintiff has been given the opportunity to cure the default or modify the mortgage loan as provided for by statute. Plaintiff asserts that he is not in default, he has submitted his monthly $2,417.24 mortgage check, and that these checks were cashed by Wells Fargo. In support he has

provided bank statements showing monthly payments to Wells Fargo in May, July and August of 2016, and copies of his check ledger. [Doc. No. 10-2 at 22-27, 31-33.] Assuming *arguendo* that he is in default, Plaintiff alleges that Defendants never afforded him the opportunity to cure the default and reinstate the loan because they never provided him with a full accounting and declares Well Fargo did not contact him prior to its filing the NOD. In support, Plaintiff submits numerous letters from his counsel to Wells Fargo about the NOD and disputed mortgage payments.[8]

Taking the contrary position, Wells Fargo asserts that beginning in May 2016, Plaintiff failed to provide enough funds to cover his monthly payment and as a result, his loan fell into default. In support of its position, Wells Fargo submits the May and August 2016 mortgage statements related to the Portobelo Court property it mailed to Mr. Reed at his office.[9] [Doc. No. 34-1 at 57-62.] Wells Fargo declares that on March 3, 2016, it

---

[8] On October 11, 2016, Mr. Reed sent Wells Fargo a letter disputing the default and stating that Plaintiff had made his monthly mortgage payments. [Doc No. 10-2 at 13.] On December 5, 2016, Mr. Reed contacted Wells Fargo's counsel, Mr. Newman, disputing the debt and requesting a response to the Qualified Request Letter ("QRL"), asserting that Wells Fargo has cashed Plaintiff's checks for his October and November mortgage payments but have refused to apply the monies to the mortgage loan [Doc. No. 10-2 at 17-18.] On December 15, 2016, Mr. Reed sends yet another letter to Mr. Newman asking for a response to his earlier communications and seeking compliance with his earlier request for a full accounting and stating that Wells Fargo was refusing to accept Plaintiff's monthly mortgage payment and were refusing to allow him to bring his account current [*Id.* at 20.] On January 10, 2017, Mr. Reed writes to Mr. Newman conceding that the September, October and November mortgage payment checks submitted by Plaintiff have not been cashed but questions why they have not been returned. [*Id.*] There is currently no evidence before the Court that demonstrates Wells Fargo responded to these letters.

[9] The May 2016 mortgage statement indicates: (1) a new monthly payment amount of $2,882.08 beginning May 15, 2016; (2) Current Payment due $2,882.08 (Principal, interest, & escrow amount of $637.84); (3) Overdue amount due $3,623.16 (for overdue payments & late charges due 04/15/16); (4) total payment due $6,505.24. The year to date summary indicates a total received amount of $9,240.84.
The statement also includes the following activity entries: 04/28 Payment of $2,310.21; 04/28 entry for funds received in the amount of $2,310.10 that was "unapplied"; 04/28 entry for funds received in the amount of $2,145.00 that was "unapplied." [Doc. No. 34-1 at 58-59.]
The August 2016 mortgage statement indicates: (1) Current Payment due $2,715.75 (Principal, interest, & escrow amount of $471.51); Overdue amount due $9,597.27 (for overdue payments & late charges from 05/15/16-07/15/16). Total payment due $12,313.02. The year to date summary indicates a total received amount of $11,551.05. The statement also includes a warning that payment needs to be made or the foreclosure process will begin. [Doc. No. 10-2, at 34-37; Doc. No. 34-1 at 61-62.]

notified Plaintiff that beginning on May 15, 2016, his payment would increase from $2,310.21 to $2,882.08 to reflect an interest rate adjustment to 4.978%. [*Id.* at ¶14, pgs. 55-56.] Wells Fargo claims that on June 20, 2016 it received a payment from Plaintiff in the amount of $2,417.24, and because this did not cover the full payment amount due, it held the funds in a suspense account awaiting additional payment and when none was forthcoming, it refunded the $2,417.24 to Plaintiff. [*Id.* at ¶ 17.] Further, Wells Fargo declares that on August 29, 2016, it received a payment from Plaintiff in the amount of $2,417.24, but because the payment would not bring the loan balance current, it held the funds in a suspense account awaiting additional payment and when none was forthcoming, it refunded the $2,417.24 to Plaintiff on September 13, 2016. [*Id.* at ¶ 19.] Further, Wells Fargo argue that they substantially complied with the loan modification review requirement because it offered Plaintiff a loan modification in 2014. As evidence, Wells Fargo proffers a May 20, 2014 letter it purportedly sent to Plaintiff notifying him that it was responding to his request for assistance and informing him that he did "not meet the requirements for the program because: [he] did not accept the offer for assistance." [*Id. at* ¶ 12, pgs. 43-45.]

From the muddled evidentiary record before it the Court has determined that Plaintiff is in default with regards to the mortgage of the Property and has not attempted to cure the default. Even supposing Defendants' violated the notice requirements of the California Civil Code when they initially began the foreclosure process back in October 2016, the fact that the parties are currently engaging in a loan modification review process cures some of the purported earlier deficiencies. While the sale of the Property has been postponed for approximately nine months, if Wells Fargo rejects Plaintiff's loan modification application, the Court cannot compel it to modify Plaintiff's mortgage to reflect the interest rate and monthly payment Plaintiff desires. Ultimately, if Wells Fargo declines to modify the mortgage it can proceed with the foreclosure of the Property. As a consequence, the Court concludes that Plaintiff is not likely to succeed on the merits and prevent the sale of the Property. Therefore, this factor weighs against Plaintiff.

### b. Irreparable harm

Plaintiff argues that he will suffer irreparable harm if his home is sold. [Doc. No. 10-1 at 10-11.] Defendants counter that Plaintiff has failed to establish "that he is likely to suffer irreparable harm in the absence of preliminary relief." [Doc. No. 34 at 6:13-14.] The Court agrees with Defendant.

Although "[t]he loss of a home is a serious injury [] such harm does not alone entitle him to injunctive relief." *Tyson v. TD Servs. Co.,* Case No. 5:12-cv-03766-HRL, 2016 WL 4140905, at *4 (N.D. Cal. Aug. 4, 2016) (noting plaintiff's claims were undercut by "the fact that he has not made a mortgage payment in six years and is more than $700,000 in arrears."). *See also Alcaraz v. Wachovia Mortg. FSB,* 592 F. Supp. 2d 1296, 1301-02 (E.D. Cal. 2009) (concluding that although the loss of a home is a serious injury, where plaintiff sought a loan beyond her financial means, the pending sale did not constitute irreparable injury.) Further, a loss of property is not an irreparable injury when the plaintiff has not established a right to remain in the property or his/her ability to tender the amounts owed. *Eshraghi v. Cal. Bank & Trust Corp.*, No. CV F 11-1733 LJO SKO, 2011 WL 4971956, at * 10 (E.D. Cal. Oct. 19, 2011). *See generally, Barrett v. Popular Inc.,* No. C07-0637RSL, 2007 WL 1753539 (W.D. Wash. June 18, 2007) ("Although the potential loss of her home is certainly extreme, plaintiff could have paid the amount allegedly owed" to halt the sale which would have resulted in a solely economic injury.).

Here, the evidence in the record demonstrate that since May 2016, Plaintiff has failed to provide enough funds to cover his monthly payment and/or failed to make monthly mortgage payment at all, resulting in his loan falling into default. Plaintiff's submission of bank statements and cancelled checks for monthly mortgage payments in amounts Plaintiff unilaterally deemed sufficient to cover each month's mortgage payment while ignoring the amount necessary to bring his account current, [*see, e.g.,* Doc. No. 10-2 at 22-27, 31-33], does not establish that Plaintiff has attempted to tender the outstanding amounts owed on the Property or that he has a right to remain in the Property. Accordingly, the

Court finds that Plaintiff will not suffer irreparable injury if it does not grant the preliminary injunction. This factor, therefore, also weighs against Plaintiff.

### c. Balance of the Equities

In order to obtain injunctive relief, a plaintiff must establish that "the balance of equities tips in his favor." *Winter*, 129 S. Ct. at 374. If the pending foreclosure sale occurs, Plaintiff will be deprived of his home but monetary damages could adequately compensate him for his loss. In contrast, if the sale is postponed, Defendants will not suffer any serious hardship, because, as Mr. Newman stated at the January hearing, Wells Fargo "can tolerate delay." *See, e.g., Vazquez v. Select Portfolio Servicing*, Case No. 13-cv-03789-JST, 2013 WL 5401888, at *2 (N.D. Cal. Sept. 26, 2013) ("Were a temporary restraining order to issue, it is hard to conceive of a serious hardship to Defendants . . . because any security they have in the real property would still remain, provided the security is valid.") (citation and internal quotations omitted) Accordingly, the Court finds that the balance of equities tip slightly in Plaintiff's favor.

### d. Public Interest

Defendants posit that where, as here, an injunction's reach is narrow and affects only the parties with no real impact on nonparties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." [Doc. No. 34 at 17:14-18 quoting *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1139 (9th Cir. 2009).] The Court agrees.

Although there is a public interest in allowing homeowners an opportunity to pursue claims before they are evicted from their homes, there is an equally valid public interest in allowing lenders to enforce their security interests and proceed with foreclosure sales. *Compare Cruz v. Washington Mutual Bank,* No. 11CV471 DMS (POR), 2011 WL 883098, at *2 (S.D. Cal. Mar. 14, 2011) ("[T]here is an interest in accurately resolving disputes over ownership of real property and it is in the public interest to permit homeowners the opportunity to pursue what appear to be valid claims before their homes are sold pursuant to foreclosure sale.") *with Omega v. Wells Fargo & Co*, No. C 11-02621 JSW, 2012 WL

685440, at *13 (N.D. Cal. Mar. 2, 2012) ("the Court recognizes the public interest of enforcing the Bank's secured property interest against default").

Having weighed these legitimate compelling interests, the Court concludes this factor to be neutral.

### e. Conclusion Regarding Preliminary Injunction

Because Plaintiff has not established that there are serious questions regarding the merits of the dispute, that absent a preliminary injunction, Plaintiff will suffer irreparable injury, and that issuance of a preliminary injunction is in the public interest, the Court hereby **DENIES** Plaintiff's *ex parte* application [Doc. No. 10].

## IV. Attorney's Fees

Plaintiff seeks an award of attorney's fees under the Homeowners Bill of Rights. [Doc. No. 36.] Defendants fail to address Plaintiff's request. Both sections §2924.12(i) and 2924.19(a)(h) of the California Civil Code provide that "a court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section." CAL. CIV. CODE §§ 2924.12(i), 2924.19(h).

Here, Plaintiff has not obtained a preliminary injunction enjoining the sale of his home. However, Plaintiff did secure a temporary restraining order enjoining the sale of the Property for over nine months. Therefore, he is "prevailing borrower" within the meaning of the statute. *See Monterossa v. Superior Court of Sacramento Cnty.*, 237 Cal. App. 4th 747, 753-54 (June 12, 2015) (holding that a borrower who obtains a preliminary injunction enjoining, pursuant to section 2924.12, the trustee's sale of his or her home is a 'prevailing borrower' within the meaning of the statute.) *See also Lac v. Nationstar Morg. LLC*, No. 2:15-cv-00523-KJM-AC (TEMP), 2016 WL 1212582, at *3 (E.D. Cal. Mar. 26, 2016) (finding that section 2924.12 "applies to preliminary injunctive relief, including temporary restraining orders.") Because the award of attorney's fees is provided for in the

state law, state law also supplies the method of fee calculation. *See Mangold v. Cal. Pub. Utiliites Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995).

Under California law, the attorney's fee inquiry "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1134 (2001) (citations omitted). The lodestar may be adjusted by the court in considerations of: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. *Id.* at 1132 (citing *Serrano v. Priest,* 20 Cal. 3d 25, 49 (1977)). The court should take care not to award compensation for inefficient and duplicative efforts. *Id.*

In support of his request for attorney's fees, Plaintiff has submitted a declaration from his attorney, Mr. Reed, which lists the hours he spent preparing the current unsuccessful motion. [Doc. No. 36-2 at ¶ 30.] Mr. Reed seeks reimbursement for 46.4 hours worked at an hourly rate of $350.00 for a total amount of §16,240.00. [*Id.* at ¶¶ 28, 30.] Mr. Reed declares that he

> spent 3.2 hours in reviewing records, speaking with the client, preparing and sending correspondence to the Defendant and their attorney; another 4.3 hours researching the within issue; another 20.3 hours preparing the within motion and all documents for the motion; I further put in another 4 hours to review Defendant's response and provide a reply; I further put in another 4 hours reviewing Defendant's Response and further research; I further spent another 8.6 hours preparing a reply, mine and Plaintiff's declarations , including all exhibits. I expect to spend another 2 hours in court for a total amount 46.4 hours. This comes to a total amount of attorney fees in the amount of $16, 240.00

[*Id.* at ¶ 30.] Aside from this general one paragraph description of the time spent, Mr. Reed provides no further details to the Court. [*Id.* at ¶ 30.]

The request for an hourly rate of $350 is not supported by any evidence other than Mr. Reed's declaration that this amount is his "normal hourly billing rate." [*Id.* at ¶ 28.

13

Nevertheless, the Court finds that the requested rate $350.00 to be reasonable.  *See Ingram v. Oroudjian,* 647 F.3d 925, 938 (9th Cir. 2011) (in addition to considering affidavits and evidence submitted by the parties, the court may "rely on its own familiarity with the legal market.").  However, the Court declines to award compensation for any of the time spent on the current motion.  First, the injunctive relief gained by Plaintiff was not related to the preliminary injunction motion or the response to the Court's order to show cause.  The undersigned issued the TRO after Judge Sammartino recused herself on the eve of the TRO hearing, in order to maintain the status quo while the Court became familiar with the case and because Defendants acquiesced to it.  Second, the TRO remained in place because all parties agreed to extend it while Plaintiff's loan modification application was reviewed.  In essence the work Plaintiff's counsel performed related to this motion was immaterial to the injunctive relief awarded.  Finally, the Court notes that the request seeks compensation for 16.6 hours Mr. Reed spent preparing his reply to Defendants' response to the order to show cause, yet the reply contained substantially the same arguments as the original application and the accompanying exhibits and declarations were practically identical to those submitted earlier.  *See Ketchum*, 24 Cal. 4th at 1132 ("Trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation.")  In light of these circumstances, the Court exercises its discretion and declines to award attorney's fees to Plaintiff.

## V.      Conclusion

For the reasons discussed above, the Court hereby **DENIES** Plaintiff's *ex parte* application for preliminary injunction and request for attorney's fees.  [Doc. No. 10.]

It is **SO ORDERED**.

Dated:  October 11, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge