1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10   MARK WARREN,                      Case No.:  3:16-cv-2872-CAB-(NLS)
11                         Plaintiff,
                                       **ORDER ON MOTIONS TO DISMISS**
12   v.                                **FIRST AMENDED COMPLAINT**
                                       **[Doc. No. 24, 43-1]**
13   WELLS FARGO & CO., WELLS
     FARGO BANK, N.A., et al.
14
                         Defendants.
15

16
17        This matter comes before the Court on the motion to dismiss filed by Defendants
18   Wells Fargo Bank, N.A., and Wells Fargo & Company (collectively "Wells Fargo") [Doc.
19   No. 24]  and Defendant Clear Recon Corp's ("CRC") motion to dismiss[1] [Doc. No. 43-1,
20   43-2].  The Wells Fargo motion has been fully briefed.  As to CRCS's motion, because
21   CRC is a nominal defendant and the motion contains substantially similar arguments to
22   those of Wells Fargo, the Court has interpreted CRC's motion as joining that of Wells
23   Fargo's.  Accordingly, the Court has determined that it does not need a separate opposition
24   from Plaintiff.  The Court finds the motion suitable for submission on the papers and
25
26   ────────────────────
27
28   [1] CRC's motion to dismiss was attached as an exhibit to its motion for relief from default, filed on June
     30, 2017.

                                           1

without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the following reasons, Wells Fargo's motion is granted as set forth below.

## I. BACKGROUND

On October 27, 2016, Plaintiff Mark Warren filed suit in the Superior Court of the State of California against Wells Fargo alleging a myriad of claims stemming from a mortgage on a property located in San Diego. The complaint included allegations of violations of the Truth in Lending Act ("TILA"), the Home Ownership and Equal Protection Act ("HOEPA"), 15 U.S.C. § 1601 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 1 U.S.C. § 2601 et seq. [Doc No. 1-2[2] ("the complaint").]

On November 22, 2016, Wells Fargo removed the action to this Court pursuant to the provisions of 28 U.S.C. §§ 1332 and 1441(b). [Doc. No. 1.]

In mid-January 2017, Plaintiff received two separate Notices of Sale, one setting January 19, 2017 as the date of the public auction of the Property, the second setting January 31, 2017 as the auction date. [Doc. No. 10-3 at 39, 41-51.] In response to the notices Plaintiff filed an *Ex Parte* Application for a Temporary Restraining Order and Preliminary Injunction[3] and Attorney Fees. [Doc. No. 10.] A hearing on Plaintiff's TRO Application was held on February 16, 2017, and Defendants were enjoined from selling the Property for 120 days.[4] [Doc. No. 19.]

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

[3] On May 2, 2017, the Court issued an Order to Show Cause regarding the Request for Preliminary Injunction and setting a June 8, 2017, hearing date. [Doc. No. 30.] Wells Fargo submitted their response in opposition [Doc. No. 34] and Plaintiff filed his reply. [Doc. No. 36.] At the June 8, 2017 hearing Plaintiff was represented by Mackenzie Colt and Fred Hickman appeared for Wells Fargo. Neither counsel had actual or detailed knowledge of the case. The lead attorneys on the case, David Newman and Mark Reed were not present. [Doc. No. 38.] On October 11, 2017, Plaintiff's Request for Preliminary Injunction was denied. [Doc. No. 59.]

[4] Subsequently, the TRO was extended three times until its expiration on September 27, 2017. [Doc. No. 40, 46, 52.]

On March 22, 2017, Plaintiff requested and was granted leave to file an amended complaint. [Doc. Nos. 20, 21]. On March 30, 2017, the Amended Complaint ("FAC") was filed adding CRC as a Defendant. [Doc. No. 22.]

The FAC alleges that in 1999, Plaintiff obtained a $225,000 mortgage from an unidentified source to purchase 5934 Portobello Court, San Diego, CA 92124 (the "Property"). [Doc. No. 22 at ¶ 35.] In 2002, Plaintiff obtained a new negative amortization mortgage loan on the property from Countrywide Home Loan. Inc. [*Id.*]

In 2009, Plaintiff obtained a loan modification from Wachovia[5] that reduced the mortgage loan amount by $50,000.00 and allowed Plaintiff to make interest-only monthly loan payments at 3.978%, increasing in rate annually until May 2016 when both principal and interest payments at 4.978% would become due. [*Id.* at ¶ 36.][6]

In January 2013, Plaintiff underwent heart surgery and was unable to work for several months. [*Id.* at ¶ 37.] As a result of his health issues and resulting limited ability to work, Plaintiff sought a loan modification with Wells Fargo. [*Id.* at ¶¶ 37-38.]

Without providing a reason, Wells Fargo notified Plaintiff that his request for a loan modification was being turned down but informed Plaintiff that he would be eligible for an "in house" "proprietary" loan modification. [*Id.* at ¶¶ 40, 41.] Plaintiff was informed that under the terms of this modification "that the interest was *2.5% for the life of the loan* and that he had to complete a 3 month trial period." [*Id.* at ¶ 42.] Plaintiff was also told and led to believe the monthly payment for the life of the loan, not just limited to the trial

---

[5] On December 31, 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB. [Doc. No. 34-1 at 10-13.] On November 1, 2009, Wachovia merged into and became a division of Wells Fargo Bank, Southwest, N.A. Following its merger with Wachovia, Wells Fargo Bank, Southwest, N.A. took over the mortgage on the Property. Wells Fargo Bank, N.A., in turn became successor by merger with Wells Fargo Bank Southwest. N.A. [Doc. No. 34-1 at 10-16.]

[6] Prior to the mortgage with Wachovia Plaintiff and World Savings Bank, a Federal Savings Bank, entered into an Adjustable Rate Mortgage Note, Pick-a-Payment Loan on the Property for $456,000. [Doc. Nos. 10-3 at 12-26; 34-1 at 18-23.]

period, would be $1,863.56 inclusive of property taxes. [*Id.*] Without memorializing the terms, Plaintiff and Wells Fargo entered into the trial period. [*Id.* at ¶¶ 43-44.]

After successfully completing the trial period, Plaintiff received the loan modification papers from Wells Fargo. [*Id.* at ¶ 45.] However, the loan modification contained terms different for what Plaintiff understood the parties had agreed. [*Id.*] The modification Wells Fargo offered Plaintiff would have resulted in a monthly payment of $1,486.95, interest rate of 2.728 % for years 1-5 of the loan; a monthly payment of $1,715.22, interest rate of 3.728 % for year 6 of the loan; a monthly payment of $1,954.60, interest rate of 4.728 % of year 7; a monthly payment of $2,203.27 at an interest rate of 5.728%; culminating in a monthly payment of $2,367.78, interest rate of 6.375% for years 9-40. [*Id.* at ¶ 46.] Having not been offered a 2.5 per cent fixed rate loan with monthly payments of $1,863.56, Plaintiff refused the modification. [*Id.* at ¶ 49.]

Following his refusal of the loan modification, Wells Fargo began a pattern of harassment against Plaintiff, that continued even after Wells Fargo was sent a cease and desist letter by Plaintiff's counsel [*Id.* at ¶¶ 49, 51] The harassment took the form of phone calls informing Plaintiff he had missed a mortgage payment after his mortgage check had cleared his bank account, incorrectly increasing the amount to be placed in escrow to cover the property taxes on the Property, and changing the name on the mortgage statement to that of Plaintiff's counsel, Mr. Reed. [*Id.* at ¶ 51.]

Subsequently in 2016, Plaintiff completed another loan modification application. [*Id.* at ¶ 52.] Wells Fargo refused the request on the grounds that it had determined that Plaintiff's monthly income of $1,700.00 was insufficient to cover the mortgage payment. [*Id.* at ¶ 53.] Plaintiff maintains that the monthly income calculation was determined arbitrarily and contrary to proof. [*Id.*] Plaintiff "was never told he could appeal the decision nor that he may obtain all of the inputs used in the net present value calculation upon written request to the Defendant." [*Id.*]

After the second attempt at modifying the loan failed, Wells Fargo "amped up" its harassment of Plaintiff. [*Id.* at ¶ 55.] Wells Fargo repeatedly called Plaintiff and sent him

letters, refused to credit mortgage payments that Plaintiff made, did not credit "the payments made as to Mr. Warren being in arrears (falsely)," sent a notice of deficiency for over $15,000.00 and filed a Notice of Default against the Property ("NOD"). [*Id.* at 58.] As a result of Defendants' action, the title of the Property has been clouded "making it almost impossible for Mr. Warren to refinance." [*Id.*]

The FAC alleges 20 separate causes of action against Defendants, namely: (1) breach of the covenant of good faith & fair dealing; (2) violation of the California Civil Code section 2923.6(f); (3) violation of the California Civil Code section 2924.10; (4) violation of the California's Rosenthal Act and Federal Fair Debt Collection Practices Act ("FDCPA"); (5) breach of contract / promissory estoppel; (6) breach of fiduciary duty; (7) fraud; (8) promise without intent to perform under California Civil Code section 1710(4); (9) negligent misrepresentation; (10) quiet title to real property; (11) slander of title; (12) cancellation of instrument; (13) violation of California Business & Professions Code section 17200 *et. seq.*; (14) violation of the California Deceptive Practices Act, California Civil Code section 1770; (15) accounting; (16) specific performance; (17) declaratory relief; (18) injunctive relief under California Civil Procedure Code section 526(1)(2) ; (19) violation of TILA and HOEPA, 15 U.S.C § 1601, *et. seq.*; and violation of RESPA, 1 U.S.C. § 2601 *et. seq.*

On April 7, 2017, Wells Fargo filed a motion to dismiss, seeking dismissal of all 20 causes of action pursuant to Federal Rules of Civil Procedure 12(b)(6). [Doc. No. 24.] Along with its motion for dismissal, Wells Fargo filed a request for Judicial Notice. [Doc. No. 25.] On April 14, 2017, Plaintiff filed his response in opposition [Doc. No. 27] and Wells Fargo filed a reply. [Doc. No. 31.]

On October 26, 2017, the Court granted Defendant CRC's motion to set aside default [Doc. No. 60] and ordered CRC's motion to dismiss, attached to the motion for relief from default [Doc. No. 43-1, 43-2.], filed nunc pro tunc to June 30, 2017. [No. No. 6]

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  But, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, leave to amend a pleading "shall be freely given when justice so requires. Fed. R. Civ. P. 15 (a)(2).  *See, e.g., Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("This policy is to be applied with extreme liberality.")  Dismissal without leave to amend is only appropriate when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.  *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).

## III.  JUDICIAL NOTICE

At the motion to dismiss stage a court may consider materials incorporated into the complaint or matters of public record, without converting the motion to dismiss into a motion for summary judgment.  *Coto Settlement v. Eisenberg.* 593 F.3d 1031, 1038 (9th Cir. 2010) (citation omitted); *United States v. Ritchie,* 432 F.3d 903, 908 (9th Cir. 2003) ("The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).").  The Ninth Circuit has extended

the "incorporation by reference" doctrine to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Id.; See Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Van Buskirk v. CNN,* 284 F.3d 977, 980 (9th Cir. 2002); *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

Here, Wells Fargo requested the Court take judicial notice of: (1) the Certificate of Corporate Existence certifying World Savings Bank, FSB as a federal savings bank; (2) a letter from the Office of Thrift Supervision, Department of the Treasury ("OTS") authorizing Worlds Savings Bank, FSB to change its name to Wachovia Mortgage, FSB; (3) the charter of Wachovia Mortgage, FSB, that reflects in Section 4 that Wachovia was subject to the Home Owners' Loan Act and the OTS; (4) certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.; (5) a printout from the website of the Federal Deposit Insurance Corporation, showing the history of World Savings Bank, FSB; (6) Deed of Trust, dated November 13, 2006, and recorded in the official records of the San Diego County Recorder's Office on November 20, 2006 as Document Number 2006-0835264; (7) Notice of Default, dated September 28, 2016, and recorded in the official records of the San Diego County Recorder's Office on October 3, 2016 as Document Number 2016,-0525770. [Doc. No. 25.]

Wells Fargo moves for judicial notice under Federal Rule of Evidence 201(b) because the first five documents, attached as Exhibit A, reflect official acts of the executive branch of the United States. Additionally, Wells Fargo seeks judicial notice of the Deed of Trust, attached as Exhibit B, and Notice of Default, attached as Exhibit C, on the grounds that the documents are true and correct copies of official records of the San Diego County Recorder's Office and therefore their authenticity is not subject to reasonable dispute and their accuracy cannot reasonably be questioned. Plaintiff has not opposed the use of these

documents or challenged their authenticity. Accordingly, the Court takes judicial notice of Exhibits A, B and C filed in support of the motion to dismiss. [Doc. No. 25.]

Furthermore, given the unique posture of the case, the Court has determined that it would be appropriate to look beyond the pleadings and consider the evidentiary record as a whole. In relation to the preliminary injunction application, Plaintiff submitted over 100 pages of additional documentation and Wells Fargo filed 56 pages of documents in response. [Doc. Nos. 10-2, 10-3, 16.] The documents submitted are specifically mentioned in the complaint or are pertinent to the allegations contained within it, and the authenticity of which no party contested in their preliminary injunction briefing. Accordingly, the Court will take them into account when determining the motion to dismiss.

## IV. DISCUSSION

Wells Fargo move to dismiss all of Plaintiff's causes of action for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The arguments for dismissal primarily concern the defectiveness of Plaintiff's pleadings, failure to timely bring some of the causes of action and assert that many of the state law claims are preempted by HOLA. CRC's motion raises similar lack of particularity arguments regarding a majority of the causes of action. CRC's motion focuses on the debt collection practices act claims, asserting that as a duly authorized trustee or substitute trustee it is not a debt collector within the meaning of the federal act and that its actions regarding the sale of the Property are privileged under the California Civil Code.

Notably, the FAC does not distinguish between Defendants, so the Court will presume each cause of action is being alleged against both the Wells Fargo and CRC. The Court will consider each cause of action in turn, grouping them together wherever it deems appropriate.

### A. Breach of Covenant of Good Faith and Fair Dealing and Breach of Contract / Promissory Estoppel Claims.

Plaintiff alleges he and Wells Fargo entered into an oral contract that reduced the interest rate of the mortgage on the Property to 2.5 percent for the life of the loan and fixed

the monthly payment at $1,863.56. Plaintiff contends that, by not offering him a loan modification that reflected these terms, Wells Fargo breached the oral contract between the parties. Relatedly, Plaintiff alleges that, by not honoring the terms of the oral contract, Wells Fargo breached the covenant of good faith and fair dealing implicit in the contract. Simultaneously, Plaintiff makes similar allegations related to the 2009 Wachovia Mortgage Loan assumed by Wells Fargo that the oral contract purportedly modified. Wells Fargo contend that Plaintiff fails to state a valid claim under either of these causes of action because (1) they are barred by the statute of limitations, (2) there is no breach of any agreement, and (3) Plaintiff does not allege an unambiguous promise or detrimental reliance.

In order to state a breach of contract claim, Plaintiff must allege: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). Within California, actions for violation of an oral contract must be brought within two years of the discovery of the loss or damage suffered by the aggrieved party. CAL. CIV. PROC. CODE § 339. In contrast, contract claims based on a written contract are subject to a four year statute of limitations. *Id.* at § 337(1).

To sufficiently plead a promissory estoppel claim, Plaintiff must allege: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav & Loan Ass'n,* 60 Cal. App. 3d 885, 890 (1976) (promissory estoppel cannot create a right to a loan from a conditional loan commitment letter). If the promissory estoppel claim is premised on an oral agreement then it is subject to a two year statute of limitations; if it is premised on a written contract then it subject to a four year statute of limitations. CAL. CIV. PROC. CODE §§ 337(1), 339(1); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220-221 (1991)

To successfully state a breach of covenant of good faith and fair dealing claim Plaintiff must allege something beyond breach of the contractual duty itself; that being plaintiff must allege that defendant unfairly interfered with the plaintiff's right to receive the benefits of a contract. *Trinity Hotel Inv., LLC v. Sunstone OP Props., LLC,* No. SA CV 07-1356 AHS (MLGx), 2009 WL 303330, at *11 (C.D. Cal. Feb. 5, 2009).[7] If the action for breach of the covenant of good faith and fair dealing sounds in a written contact then the four-year statute of limitations governing written contracts applies. CAL. CIV. PROC. CODE §§ 337(1), *Krieger*, 234 Cal. App. 3d at 221. For actions being pursued under an oral contract theory the two year statute of limitations will apply. CAL. CIV. PROC. CODE § 339(1).

Plaintiff provides no details regarding when he and Wells Fargo communicated regarding the first loan modification he sought from them. The complaint indicates that in January 2013 Plaintiff underwent heart surgery, after which: "making the mortgage payments became increasingly difficult and knowing that he may not be able to afford his mortgage payments he contacted Wells Fargo to try to work out a loan modification." [Doc. No. ¶ 38.] In his response in opposition, Plaintiff acknowledges that he purposely did not include specific dates as to when the alleged "oral contract" between Wells Fargo and Plaintiff was made because "[i]t is well settled law that a Motion to Dismiss at the pleading stage must be taken from the "four corners" of the complaint, not from extrinsic evidence." [Doc. No. 27 at 5.] However, Plaintiff's tactical decision to omit facts in an attempt to avoid the applicable statute of limitations fails.

---

[7] "Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement. *Careau & Co*, 222 Cal. App. 3d at 1393 (citation omitted). Performance in good faith necessitates "that neither party will do anything that will injure the right of the other to receive the benefits of the agreement." *Id.* However, "if the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395.

From the evidence in the record related to the Request for Preliminary Injunction, the Court is aware that Wells Fargo sent Plaintiff a letter "based on [their] telephone conversation" regarding the loan modification on November 6, 2013. [Doc. No. 34-1 at 25-28.] The trial payment amounts contained in the terms and conditions page attached to this letter are identical to the $1863.56 Plaintiff asserts he was offered in the oral contract and paid during the trial period. [*Id.* at 27.] Additionally, a letter enclosing the Loan Modification Agreement that Plaintiff declined to sign is dated March 20, 2014. [Doc. No. 34-1 at 30-41.][8] Plaintiff states in the FAC that he completed the trial payment period and then "waited until he received the official loan modification papers" which, the evidence shows, was sent on March 20, 2014. [Doc. No. 22 at ¶ 14.] Furthermore, a September 29, 2015 letter sent by Mr. Reed, states that "[i]n or about October 2013 my client was approved for a proprietary in house loan modification." [Doc. No. 10-2 at 8-11.] Therefore, the Court concludes that the alleged oral contract between the parties was entered into in October 2013, and Plaintiff received the paperwork that memorialized the alleged breach when he received the March 20, 2014, Loan Modification Agreement. That is, once Plaintiff received the written Loan Modification Agreement, he was on notice that it did not contain the terms the parties had purportedly agreed to. But, Plaintiff waited until October 27, 2016, two and one half years after discovery of the alleged breach, to bring these breach of oral contract claims. This is outside of the two year statute of limitations time period. Therefore, Plaintiff's breach of oral contract claims are time barred. Accordingly, the Court **GRANTS** Defendants' motion to dismiss these claims (Counts 1 & 5). Plaintiff's claims that stem from the oral contract are **DISMISSED WITH PREJUDICE** as to all Defendants.[9]

---

[8] The payment schedule under this loan agreement mirrors the terms Plaintiff asserts were offered to him.
[9] Having determined that these claims are barred by the statute of limitations, the Court declines to address the other arguments Defendants make in support of dismissal of these causes of action.

Plaintiff also makes the same Breach of Covenant of Good Faith and Fair Dealing and Breach of Contract / Promissory Estoppel claims regarding the 2009 Wachovia Mortgage Loan that was assumed by Wells Fargo. Because these claims are premised on a written agreement they are subject to a four year statute of limitation. However, Plaintiff claims the original contract was subsequently modified by an oral agreement, while simultaneously claiming breach of the original contract. But, Plaintiff cannot have it both ways, he has asserted that the parties entered into an oral contract that superseded the written contract, therefore, Plaintiff cannot subsequently claim that the original contract was still binding on the parties and was breached. As a consequence, the Court **GRANTS** Defendants' motion to dismiss the breach of written contact claims (Counts 1 & 5). Plaintiff's claims arising from the written contract are **DISMISSED WITH PREJUDICE** as to all Defendants.

### B. Violations of California Civil Code Sections 2923.6 and 2924.10 Claims

Plaintiff alleges that Defendants improperly foreclosed on the Property in violation the Homeowners' Bill of Rights ("HBOR"), California Civil Code sections 2923.6[10] and 2924.10.[11] Wells Fargo argues that Plaintiff's claims regarding violation of HBOR are preempted by the federal Home Owners Loan Act ("HOLA") and do not contain allegations that the violations were "material." CRC contend these claims are not pled with the requisite specificity.

Federal Savings Banks are subject to HOLA and are regulated by the OTS. 12 U.S.C § 1464; *Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1005 (9th Cir. 2008). OTS Regulation 560.2(b) preempts state regulation of federal thrift activities related to terms of credit, loan-related fees, servicing fees, disclosure with advertising, loan processing, loan

---

[10] Section 2923.6(f) provides that "following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial." CAL. CIV. CODE § 2923.6(f).

[11] Section 2924 enumerates the requirements that need to be followed for filing an NOD, including what information must appear in the NOD itself. CAL. CIV. CODE § 2924(a)-(c).

origination, and servicing of mortgages. 12 C.F.R. § 560.20(b). As a consequence federal courts in California have held that HBOR section 2923.6 and 2924.10 claims are pre-empted by HOLA. *See, e.g., Osorio v. Wachovia Mortg., FSB,* No. 12-cv-663-IEG (BGS), 2012 WL 1610110, at *3 (S.D. Cal. May 8, 2012) (holding that HBOR section 2923.6 and section 2924 violation claims related to a mortgage issued by Wachovia Mortgage, FSB, were preempted by HOLA); *Sato v. Wachovia Mortg., FSB,* No. 5:11-cv-00810 EJD (PSG), 2011 WL 2784567 (N.D. Cal. Jul. 13, 2011) (plaintiff's claim that lender violated California Civil Code § 2923.6 by failing to modify her loan "clearly falls under the preemption provision for 'processing, origination, sale or purchase of . . . mortgages'"); Thus, Plaintiff's HBOR section 2923.6 and 2924.10 claims will be pre-empted by HOLA if the mortgage loan at issue was issued by a federal savings bank ("FSB").

Here, Plaintiff takes the position that since the 1999 loan was not originated by Wells Fargo it is not subject to HOLA. In support of his position Plaintiff points to the 2002 negative amortization loan issued by Countrywide. However, Countrywide was not the company that issued the first mortgage on the Property and the identity of the 1999 mortgage issuer remains a mystery. In 2006, Plaintiff obtained a new mortgage loan on the Property from World Savings Bank, an FSB. [Doc. No. 25, at 15-31.] This mortgage was subject to a loan modification from Wachovia in 2009. [Doc. No. 22 at ¶ 36.] Subsequently, the modified mortgage loan was subsumed by Wells Fargo, a national banking association, following its merger with Wachovia Mortgage, FSB. [Doc. No. 25 at 6-13.] The Court will base its determination regarding the applicability of HOLA on the 2009 Wachovia mortgage because: (1) it is the mortgage to which Wells Fargo is now the successor-in-interest; and (2) is also the mortgage at issue in this case and the subject of the alleged oral modification.

"[T]here is a growing divide in the district courts" on whether HOLA preemption follows a loan throughout its lifetime. *Kenery v. Wells Fargo Bank, N.A.*, Case No.:5:13-CV-02411-EJD, 2014 WL 129262, at *4 (N.D. Cal. Jan. 14, 2014). Courts within the Ninth Circuit have adopted three distinct positions on the issue choosing to find either: HOLA

pre-emption applies to all conduct relating to the loan; HOLA preemption does not apply if the mortgage loan is held by successors to a federal savings association; or HOLA preemption applies after a loan has been transferred to a successor to a federal savings association, but only to the claims arising from actions taken by the federal savings association. *See generally, Romero v. Wells Fargo Bank, N.A.*, Case No. LA CV15-04707 JAK (JEMx), 2015 WL 12781210, at * 4 (C.D. Cal. Dec. 22, 2015) (collecting cases). This Court joins with others within this circuit who have found that "HOLA preemption continues to apply to conduct related to loans originated by a federally-chartered savings association even after those banks are merged into national banking associations." *Campos v. Wells Fargo Bank, N.A.,* Case No. EDCV 15-1200 JVS (DTBx), 2015 WL 5145520, at *5 (C.D. Cal. Aug. 31, 2015) (citation omitted). *See also Caovilla v. Wells Fargo Bank, N.A.,* No. 13-cv-1003 JSC, 2013 WL 2153855, at *6 (N.D. Cal. May 16, 2013) (collecting cases where courts have held that claims regarding foreclosures occurring post-merger are generally covered by HOLA when the loan itself originated from a pre-merger FSB); *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1295 n.1 (S.D. Cal. 2011) ("Although Defendants themselves are not federally chartered savings banks, HOLA still applies because Washington Mutual was a federally chartered savings bank at the time the loan originated."). Accordingly, the Court finds Plaintiff's HBOR claims are preempted by HOLA, and therefore **GRANTS** Defendants' motion to dismiss these claims (Counts 2 and 3). Plaintiff's California Civil Code section 2924.10 and 2940.10 claims are **DISMISSED WITH PREJUDICE**.[12]

### C. Unfair Debt Collection Claims

Plaintiff alleges that Wells Fargo is a "debt collector" that violated the FDCPA and Rosenthal Act by contacting Plaintiff numerous times about the mortgage loan on the Property after being notified that Plaintiff was represented by an attorney and that all

---

[12] Because the Court finds that Plaintiff's HBOR claims are preempted by HOLA, it declines to reach Defendants' alternative reasons for dismissal.

communications were to go through his attorney. Further, Plaintiff complains that CRC also violated the FDCPA and Rosenthal Act by failing to validate the alleged debt after being specifically requested to do so. Defendants contend that both acts are not applicable to creditors and that residential mortgage loans are not subject to the Rosenthal Act.

The FDCPA only imposes liability when an entity is attempting to collect a debt. 15 U.S.C. § 1692(e). "For purposes of the FDCPA, the word 'debt' is synonymous with 'money.'" *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2016) (citing 15 U.S.C. 1692a(5)). Because California law does not allow for deficiency judgment following non-judicial foreclosure and merely results in the sale of property subject to a deed of trust, "sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Id.* at 571-572. As the Court of Appeals explained "giving notice of a foreclosure sale to a consumer as required by the [California] Civil Code does not constitute debt collection activity under the FDCPA." *Id.* at 574 (quoting *Pfeifer v. Countrywide Home Loans, Inc.,* 211 Cal. App. 4th 1250 (2012)).

Here, Plaintiff entered into a mortgage on the Property with World Savings Bank in 2006. The deed of trust identifies Plaintiff as the borrower, World Savings Bank, FSB, as the lender and Golden West Savings Association Service Co., as the trustee. [Doc. No. 25 at 15-31.] Through a merger with Wachovia, Wells Fargo became successor in interest to the mortgage at issue. [Doc. No. 25 at 11-13.] After Plaintiff began missing loan payments, Clear Recon, as "either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 11/13/2006," initiated a non-judicial foreclosure by mailing a notice of default to Plaintiff. [Doc. No. 25 at 33-36.]

Although Plaintiff alleges that Wells Fargo and CRC are debt collectors under the act, "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Ho*, 858 F.3d at 572. Therefore, Plaintiff's allegations fail as a matter of law because "creditors, mortgagors, and mortgage servicing companies are not debt collectors

and are statutorily exempt from liability under the FDCPA." *Shetty v. Lewis,* No. 16-cv-03112 BLC, 2017 WL 1177993, at *6 (N.D. Cal. Mar. 30, 2017). *See also Aguirre v. Cal-W. Reconveyance Corp.*, No. 11-cv-06911 CAS (AGRx), 2012 WL 273753, at *7 (C.D. Cal. Jan. 30, 2012) ("[t]he law is well settled . . . that creditors, *mortgagors,* and *mortgage servicing companies* are not debt collectors and are statutorily exempt from liability under the FDCPA.") (internal citations omitted) (emphasis in original). Moreover, the fact that the pre-foreclosure notice contained the language "we are attempting to collect a debt," "does not convert the non-judicial foreclosure into an attempt to collect a debt under the FDCPA." *Carbone v. Caliber Home Loans, Inc.*, 15-CV-5190(JS)(GRB), 2017 WL 4157265, at * 2 (E.D.N.Y. Sept. 19, 2017) (quoting *Evlabobo v. Aldridge Pite, LLP*, No. 16-CV-0539, 2016 WEL 7379021, at *5 (D. Nev. Dec. 20, 2016)).

"The definition of the 'debt collector' under the [Rosenthal Act] is broader than under the FDCPA and includes any person who, 'in the ordinary course of business,' collects a debt on behalf of himself or others.'" *Horton v. Cal. Credit Corp. Ret. Plan*, 835 F. Supp. 2d 879, 890 (S.D. Cal. 2011) (citing Cal. Civ. Code § 1788.2(c)). Notwithstanding this broader definition, numerous California district courts have concluded that foreclosing on a property pursuant to a deed of trust does not constitute debt collection under the Rosenthal Act. *See, e.g., Baldain v. Am. Home Mortg. Servicing, Inc.,* No. CIV. S-09-0931 LKK/GHH, 2010 WL 56143, at *4 (E.D. Cal. Jan. 5, 2010); *Walker v. Equity 1 Lenders Grp.*, No. 09cv325 WQH (AJB), 2009 WL 1364430, at *7 (S.D. Cal. May 14, 2009) ("The "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA or the [Rosenthal Act]." (citations omitted)); *Izenberg v. ETS Servs., LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008) ("[F]oreclosure does not constitute debt collection under the [Rosenthal Act] ...."). This is because "[t]he Rosenthal Act does in fact mirror in the FDCPA, their intentions were the same and exclusive, and, as such, a loan servicer is not a debt collector under these facts." *Mannello v. Residential Credit Solutions*, Case No. 2:15-cv-07674-CAS-AJW, 2016 WL 94236, at *4. (C.D. Cal. Jan. 7, 2016). As alleged, the FAC supports the

conclusion that Defendants were foreclosing on the Property, which is not the collection of debt within the meaning of the Rosenthal Act. Therefore, the Rosenthal Act claim also fails.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss the FDCPA and Rosenthal Act Claims (Count 4). Because the Court finds that leave to amend would be futile, Plaintiff's claim is **DISMISSED WITH PREJUDICE** as to all Defendants.[13] *See Izenberg,* 589 F. Supp. 2d at 1999 (concluding that because foreclosure does not constitute debt collection under the Rosenthal Act or the FDCPA, plaintiff cannot cure the deficiency, making dismissal with prejudice appropriate).

### D. Breach of Fiduciary Duty Claim

Plaintiff alleges that Defendants breached the fiduciary duty they owed to him by acting and continuing to act in their own benefit and to the detriment of Plaintiff. Wells Fargo counter that lenders and loan servicers do not owe fiduciary duties to borrowers and CRC contends that the claim is not pled with the required specificity.

"[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and the lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453 (2006) (collecting cases). *See also Leisher v. Wachovia Mortg. Inc.,* No. 10cv2294-WQH-POR, 2011 WL 98575, at *6 (S.D. Cal. Jan. 12, 2011) (noting the existence of "the general rule in California that there is no fiduciary relationship between a borrower and lender.") Plaintiff has pled that "in deciding to provide loan modification services and advice and direction, Defendant has exceed the traditional lender/borrower role…" [Doc. No. 22 at ¶ 128.] Further Plaintiff alleges that Defendants had a duty to keep him accurately informed on all issues regarding his loan, provide a good faith review of his loan modification or other loss mitigation options; Wells

---

[13] Having found that Defendants are not attempting to collect a debt as defined by the statutes, the Court need not decide whether Defendants conduct related to the Property foreclosure violated any other sections of the acts

Fargo also accepted loan payments without crediting his account and failed to protect his rights. [Doc. No. 22 at ¶¶ 129, 130.] The allegations seem to be directly mostly at Wells Fargo with the FAC remaining silent regarding any duty owed by CRC. Regardless, these allegations do not establish the existence of any special circumstances that would have created a fiduciary relationship between Plaintiff and Wells Fargo or Plaintiff and CRC and are simply conclusory. Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 6). Plaintiff's breach of fiduciary duty claim is **DISMISSED WITH LEAVE TO AMEND**.

### E. Fraud, Promise Without Intent to Perform, Negligent Misrepresentation, and Violation of California Civil Code Section 1770 Claims

Plaintiff alleges that when he contacted Wells Fargo about modifying his mortgage loan following his heart surgery in 2013, Wells Fargo misrepresented orally and in writing that he would receive a loan modification the terms of which would reduce the interest rate to 2.5 percent for the life of the loan, with monthly payments being fixed at $1,863.56. Further, Plaintiff alleges that he was informed that all he had to do to secure these loan modification terms was successfully complete the three month trial period. As a result of the misrepresentations Plaintiff has brought claims for fraud, promise without intent to perform, negligent misrepresentation, and violation of California Civil Code section 1770. Both CRC and Wells Fargo seek dismissal of these claims asserting are not plead with the necessary specificity. Further Wells Fargo contends that the claims are barred by the applicable statute of limitations, do not allege the requisite intent, rely on the existence of a duty of care that is absent in this case, and fail because Plaintiff cannot convert a contract claim into a tort claim.

To successfully state a claim for fraud, a plaintiff must allege "a representation, usually of fact, which is false, knowledge of falsity, intent to defraud, justifiable reliance on the misrepresentation, and damage resulting from that justifiable reliance." *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 72-73 (1990). "'Promissory fraud'" is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention

to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable." *Lazar v. Superior Court,* 12 Cal. 4th 631, 638 (1996) (citing *Union Flower Market, Ltd. v. S. Cal. Flower Market, Inc.,* 10 Cal. 2d 671, 676 (1938); CAL. CIV. CODE § 1710). The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable grounds for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Ragland v. U.S. Bank Nat. Assn.,* 209 Cal. App. 4th 182, 196 (2012).

In California and under Federal Rule of Civil Procedure 9(b) "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); CAL. CIV. CODE § 1710. The pleader must state the time, place and specific content of the false representation as well as the identities of the parties to the misrepresentation. *Id.; Sebastian Int'l, Inc., v. Russolillo,* 128 F. Supp. 2d 630, 634-35 (C.D. Cal. 2001). Within California, actions for fraud must be brought within three years of the date of the misrepresentation. CAL. CIV. CODE § 338(d).

The complaint provides bare allegations regarding when the false representations were made. All that is known is that the misrepresentation was made, by an unidentified individual, sometime after Plaintiff underwent heart surgery in January 2013. [Doc. No. 22 at ¶ 38.] From the evidence in the record, the Court has been able to surmise that the conversation and resulting alleged oral contract was likely entered into in October 2013, but the exact date of the misrepresentation has not been pinpointed. [*See* Doc. Nos. 34-1 at 25-28; No. 34-1 at 30-41; Doc. No. 10-2 at 8-11.] Regardless of the Court's supposition, the lumping of all of the Defendants together, along with the scant details provided in the complaint concerning the "who, what, when, where and how" of the alleged fraud are not sufficient to satisfy Rule 9(b)'s specificity requirements. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) (emphasis added; internal quotation marks omitted)

("Averments of fraud must be accompanied by the *who, what, when, where, and how* of the misconduct charged.")

Even assuming that Plaintiff has satisfied the first elements of the claims, the Court finds that Plaintiff has failed to adequately allege fraudulent intent, justifiable reliance or damages. For example, the FAC alleges that "when Defendant made these representations, it knew them to be false and made them with the intention to deceive, to defraud, and to induce Plaintiff to act in reliance on these representations in the manner alleged, or with the expectation that Plaintiff would so act." [Doc. No. 22 at ¶ 138.] But, such allegations simply recite the element of the claim and are conclusory. Similarly, Plaintiff's allegations that he has been damaged in an amount to be proven at trial, has had to retain legal counsel, incur costs related to this suit, and has been unable to take other steps to move on with his life, such as refinancing or finding other means to avoid default and foreclosure by paying off the purported arrearage owed, do not adequately prove reliance or damage. [Doc. No. 22 at ¶¶ 142, 143, 152, 153, 158, 160, 161,194-197.] Because, "[i]n the mortgage context, a plaintiff's allegations that he declined to 'explore other options' as a result of a lender's false representations are generally not sufficient to withstand a motion to dismiss because they simply 're-state the element of the claim.'" *Deschaine v. IndyMac Mortg. Services*, No. CIV. 2:13-1991 WBS CKD, 2013 WL 6054456, at *3 (E.D. Cal. Nov. 15, 2013).

Furthermore, Plaintiff's allegations do not show that any damages he suffered were the result of Wells Fargo's conduct, rather than his own failure to make mortgage payments. Wells Fargo sent multiple mortgage statements to Plaintiff noting the amount he was in arrears along with notices of default. [Doc. No. 10-2 at 20, 22-27, 34-37; Doc No. 34-1 at 57-62; Doc. No. 36-1 at 37, 54-55]. Additionally, in the Preliminary Injunction briefing, Wells Fargo submitted a declaration from Mr. Brandon McNeal, Vice President Loan Documentation, Wells Fargo Bank N.A., attests that "as of May 16, 2017 there is an outstanding principal balance of $435,974.53, plus interest, fees, and other recoverable amounts due and owing on the Loan." [Doc. No. 34-1 at ¶ 20.] Notwithstanding the allegations in the complaint, the facts show that Plaintiff is facing foreclosure because he

has not submitted checks for the correct monthly mortgage payments and lacks the financial resources to cure the resulting default. *See, e.g., DeLeon v. Wells Fargo Bank, N.A.,* 10–CV–10390–LHK, 2011 WL 311376, at \*7 (N.D. Cal. Jan.28, 2011) ("Without some factual basis suggesting that Plaintiffs could have cured the default ... the Court cannot reasonably infer that Wells Fargo's alleged misrepresentations resulted in the loss of plaintiff's home. The facts alleged suggest that Plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default.").

Accordingly, the Court **GRANTS** Defendants' motion to dismiss these claims (Counts 7, 8, 9, and 14).[14] Plaintiff's fraud, promise without intent to perform, negligent misrepresentation and violation of the California Deceptive Practices Act claims are **DISMISSED WITH LEAVE TO AMEND**.

### F. Quiet Title Claim

Plaintiff seeks to quiet title to the Property, alleging that Defendants are without any right, title, ownership or interest in the Property, notwithstanding the foreclosure process. Defendants contend that the claim as pled fails to allege the necessary elements. Further Wells Fargo asserts that Plaintiff's claim fails because he has not paid or offered to pay the amount astounding on the Deed of Trust.

To state a claim for quiet time, a complaint must be verified and include: "(1) a legal description of the property and its street address or common designation, (2) the title of the plaintiff and the basis of the title, (3) the adverse claims to the title of the plaintiff, (4) the date as of which the determination is sought and (5) a prayer for the determination of the

---

[14] Because the Court finds that Plaintiff's Fraud, Promise Without Intent to Perform, Negligent Misrepresentation, and Violation of California Civil Code Section 1770 claims are not made with the requisite specificity and do not allege necessary elements of the claims, the Court need declines to address the additional arguments Defendants make in favor of dismissal of these claims. In addition, the Court notes that because it has been unable to ascertain when the alleged fraud occurred, a ruling regarding the timeliness of the fraud claim is not appropriate at this stage.

title of the plaintiff against the adverse claims." *Walker* 2009 WL 1364430, at *9 (citing CAL. CIV. PROC. CODE § 761.020). "A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *Williams v. Bank of America, N.A.,* 15-cv-00792 LHK, 2015 WL 6602403, at *7 (N.D. Cal. Oct. 30, 2015), *aff'd sub nom. Williams v. Bank of America,* No. 15-17335, 2017 WL 2983055 (9th Cir. July 13, 2017) (citations and quotations marks omitted). "Therefore, a borrower may not assert quiet title against a mortgagee without first paying the outstanding debt on the property." *Fenton v. Wells Fargo Home Mortg.,* Case No. 17-cv-0113 DMS (WVG), 2017 WL 1346672, at *4 (S.D. Cal. Apr. 12, 2107) (internal quotations marks and citations omitted).

Here, Plaintiff alleges that "defendant is without any right, title, ownership or interest whatsoever" in the Property and that "any alleged title obtained by the within defendant was obtained through breach of contract, by wrongful acts, unconscionable and inequitable practices and breach of fiduciary duties." [Doc. No. 22 at ¶ 164.] Further, it is alleged that "despite making his monthly mortgage payments to Wells Fargo, Defendant has refuse[d] to properly credit them to his account, which is artificially putting his account in default." [*Id.*] Plaintiff seeks to quiet title as of the date of the filing of this lawsuit. [*Id.* at 166.] In addition, the FAC has met the verified requirement.

However, Plaintiff has failed to establish that he is the "rightful owner of the property, i.e., that [he] has satisfied [his] obligation under the Deed of Trust." *Williams*, 2015 WL 6602403, at *7. Neither does the FAC contain an allegation that Plaintiff has or is willing and able to make a viable tender offer. *See Ibarro Ramos v. Federal Home Loan Mortgage Corp.*, 2013 WL 12097567, at *6 (S.D. Cal. Jan 8, 2013) (dismissing quiet title claim where plaintiff failed to allege he made a valid and viable tender offer). Additionally, the evidentiary record demonstrates that Plaintiff has not satisfied his obligation, is experiencing difficulties in making his monthly mortgage payments, and has not made a mortgage payment in months. [*See* Doc. No. 10-2 at 20, 22-27, 34-37; Doc No. 34-1 at 57-62; Doc. No. 36-1 at 37, 54-55]. The declaration from Wells Fargo's Vice President of

Loan Documentation, Wells Fargo Bank N.A., also provides further evidence that the debt has not been satisfied attesting, "as of May 16, 2017 there is an outstanding principal balance of $435,974.53, plus interest, fees, and other recoverable amounts due and owing on the Loan." [Doc. No. 34-1 at ¶ 20.] Regardless of the allegations in the FAC, these facts do not support a conclusion that Plaintiff has tendered, or even has the ability to tender, any outstanding debt on the subject property. Therefore, the Court concludes that Plaintiff cannot sustain a quiet title action because "[i]t is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 10). Plaintiff's quite title claim is **DISMISSED WITH LEAVE TO AMEND**.

### G. Slander of Title Claim

Plaintiff alleges Defendants slandered Plaintiff's title to the Property by purposefully causing Plaintiff to default on the mortgage loan and improperly filing a Notice of Default on the Property. Wells Fargo contends Plaintiff has failed to allege several of the necessary elements of the claim and it should, therefore, be dismissed. CRC argues that its action regarding the filing of the Notice of Default are protected by privilege and are therefore not actionable.

"The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title." *Ogilvie v. Select Portfolio Servicing,* 12-CV-1654, 2012 WL 3010986, at *4 (N.D. Cal., July 23, 3012) (citations omitted). To successfully state a claim for slander of title, a plaintiff must allege: "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." ." *Summer Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC,* 205 Cal. App. 4th 999, 1030 (2012) (citations omitted). However, absent factual allegations of malice, "the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutorily nonjudicial foreclosure procedures, [are] privileged communication[s] . . . ." *Kachlon v. Markowitz,* 168 Cal. App. 4th 316, 333 (2008); *see also Ogilvie* 2012 WL 3010986, at *4 (collecting cases). Malice requires the publication

be "motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon,* 168 Cal. App. 4th at 336 (emphasis and internal citations omitted).

The FAC allegations related to the slander of title claim do not contain sufficiently pled allegations regarding the falsity of the notice of default at issue or the pecuniary loss element. Rather, Plaintiff simply alleges that he has "incurred and will continue to incur attorney fee and costs." [Doc. No. 22 at ¶ 172] However, "in an action for slander of title fees incurred to quiet title are recoverable and fees incurred prosecuting the slander of title are not." *Ogilvie, 2012 WL 3010986, at \*4* (quoting *Ryan v. Editions, Ltd W., Inc.,* No. C-06-4812-PVT, 2007 WL 4577867, at \*14 n. 13 (N.D. Cal. Dec. 27, 2007)). Therefore the allegations fail to establish pecuniary loss.

The California Civil Code provides that actions taken to comply with its statutory provisions regarding nonjudicial foreclosure sales of properties are privileged communications. Here, the allegations are premised on actions taken and communications filed in furtherance of the nonjudicial foreclosure sale of the Property, which are therefore subject to privilege, unless Plaintiff can establish Defendants acted maliciously. *See* CAL CIV CODE § 2924(d); *Diunugala v. JP Morgan Chase Bank, N.A.,* CASE NO. 12cv2106-WQH-NLS, 2013 WL 12096449, at \*7 (S.D. Cal. Jan 18, 2013). While the FAC alleges that the publication was "not privileged" and done "wrongly," [Doc. No. 22 at ¶¶ 168, 169], such an allegation is not sufficient to overcome the privilege. Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 11). Plaintiff's slander of title claim is **DISMISSED WITH LEAVE TO AMEND**.

### H. Cancellation of Instrument Claim

Plaintiff seeks to cancel the NOD on the Property, yet fails to indicate under what statutory provision relief is being sought. Wells Fargo contends that Plaintiff has not shown a valid ground for cancelling the NOD. CRC contends that the claim has not been pled with the requisite particularity.

Under California Civil Code § 3412 a court may order cancellation of a written instrument where "there is reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." CAL. CIV. CODE § 3412. Assuming Plaintiff is suing under this provision, he has failed to plead facts sufficient to show that the notice of default should be cancelled.

Plaintiff alleges that "[t]here is a reasonable apprehension that should this instruments [sic] remain filed" against the Property it may cause serious injury because the "instrument clouds Plaintiff's title . . . in a fundamental manner and impair the marketability and value of Plaintiff's." [Doc. No. 22 at ¶ 176.] Further, Plaintiff alleges that if the NOD remains in place he may not be able to refinance the property or obtain a loan modification and that if it remains filed Defendants may be allowed to foreclose on the property. [Doc. No. 22 at ¶¶ 177, 178.] But, nothing about the notice of default has altered Plaintiff's payment obligations under the mortgage loan or the substantive rights that may be asserted against him after a default. *See Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 989 (N.D. Cal. 2015). Furthermore, from the evidentiary record in this case, the Court has determined that Plaintiff is in default with regards to the Property and has not attempted to cure the default. As a consequence of the default, Wells Fargo is entitled to proceed with the foreclosure of the Property, which includes the filing of the notice of default. Therefore, it cannot be said that the notice of default is "void or voidable" against Plaintiff. Moreover, it is Plaintiff's default that has caused the injury, i.e. clouded the title of the Property. Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 12). Plaintiff's cancellation of instrument claim is **DISMISSED WITHOUT LEAVE TO AMEND** as to all Defendants.

### I. Violation of California Business & Prof Code Section 17200 Claim

Plaintiff alleges that Defendants have violated the California Business & Professional Code by not agreeing or implementing a modification of the mortgage loan and by not providing written acknowledgment of receipt of Plaintiff's first lien modification application. Wells Fargo contends that because Plaintiff has not stated a

claim under his other claims, he has failed to tether his Business & Professional Code section 17200 ("UCL") claim to any provision, statute, or regulation. CRC contends that the claim has not been pled with the requisite particularity.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 *et seq.*)]." CAL. BUS. & PROF. CODE § 17200. The statute establishes three varieties of unfair competition - acts or practices which are (1) unlawful, (2) unfair, or (3) fraudulent. *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). To successfully state a claim based on an unlawful business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law. *People v. McKale,* 25 Cal. 3d 626 635 (1979).

Here, Plaintiff's UCL claim is predicated on violations of California Civil Code sections 2923.6 and 2924.10. Section 2923.6 imposes several requirements on mortgage servicer if a borrower submits a loan modification or workout plan. Section 2924.10 provides that upon submission of a complete first lien modification application a mortgage servicer shall provide written acknowledgment of the receipt of the documentation that must include certain information.

As explained above, Plaintiff's claims for violation of sections 2923.6 and 2924.10 are preempted by HOLA. Because Plaintiff's UCL claim is based solely on the sections of the Civil Code the Court has determined are preempted, it follows that the UCL claim is also preempted. *See Lane v. Suntrust Mortg., Inc.,* No. 14-cv-01367-BAS(WVG), 2015 WL 419834, *5 (S.D. Cal. Jan. 28, 2015) ("Since Plaintiffs fail to state a cause of action under the HBOR, the second and third causes of action for unfair business practices in violation of the UCL and for declaratory and injunctive relief must also be dismissed."*); Sato*, 2012 WL 1110054, at *7 (holding Plaintiff's UCL claims preempted where borrowed from other preempted claims); *Osorio,* 2012 WL 1610110, at *5 (finding that since section 2923.5 claim was preempted by HOLA, Plaintiff's UCL claim based on violation of section 2923.5 was also preempted.). Accordingly, the Court **GRANTS** Defendants' motion to

dismiss this claim (Count 13).[15]  Plaintiff's Violation of California Business & Prof Code Section 17200 claim is **DISMISSED WITH PREJUDICE** insofar as it seeks to bring a UCL claim premised on sections 2923.6 and 2924.10 of the Civil Code as to all Defendants. However, this ruling does not preclude Plaintiff from amending the FAC to plead this cause of action as a derivative of some other alleged illegal conduct or fraud committed by Defendants.

### J. Request for Accounting

Plaintiff alleges that Defendants have failed to produce a proper or accurate accounting and requests Defendants furnish him with one.  Defendants contend that Plaintiff has not satisfied the necessary elements for an accounting claim.  Additionally, CRC contends that the claim has not been pled with the requisite particularity.

Accountings are "equitable in nature, designed to prevent unjust enrichment." *Brosious v. JP Morgan Chase Bank, N.A.*, No. 12-03996 JCS, 2015 WL 5173063, at *3 (E.D. Cal. Sep. 2, 2015) (citations omitted). Ordinarily, to bring a successful claim for an accounting a plaintiff must demonstrate the existence of a relationship which requires an accounting and that some balance is due the plaintiff.  *Kritzer v. Lancaster*, 96 Cal. App. 2d 1 (1950).  "The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obligated to surrender."  *Ware v. Bayview Loan Servicing,* LLC, No. 13-CV-1310 JLS (NLS), 2013 WL 6247236, at *10 (S.D. Cal. Oct. 29, 2013) (quotation omitted). But, "[a] suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law."  *St. James Church of Christ Holiness v. Superior Court,* 135 Cal. App. 2d 352, 359 (1955).

---

[15] Because Plaintiff explicitly tied his UCL claims to the California Civil Code sections 2923.6 and 2924.10 claims which the Court has found are preempted by HOLA, it declines to reach Defendants' alternative reasons for dismissal of this claim.

Plaintiff has not alleged the existence of a relationship that requires an accounting or that Defendants owe him money.  Rather he alleges that he cannot ascertain how much money he owes Defendants.  [Doc. No. 22 at 208.]  Neither has Plaintiff alleged that the account is so complicated that the Court must perform an accounting.  Not knowing the amount Plaintiff's owes is not sufficient to state an accounting claim and could easily be ascertained through discovery in this action.  *See, e.g., Mendez v. Wells Fargo Home Mortg.*, No. 12-CV-02457-W, 2013 WL 1773881, at *6 (S.D. Cal. Apr. 25, 2013).  Additionally, Plaintiff has not pled any of the extraordinary situations which might otherwise substantiate an assertion of equity jurisdiction.  *See Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009).  Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 15).  Plaintiff's accounting claim is **DISMISSED WITH LEAVE TO AMEND**

### K.  Request for Specific Performance

Plaintiff seeks specific performance of the alleged oral agreement, wherein Plaintiff's mortgage would be modified to reflect an interest rate of 2.5 percent for the life of the loan with month payments fixed at $1,863.56.  Wells Fargo contend that the claim fails because there is no enforceable contract between the parties.  CRC contends that the claim has not been pled with the requisite particularity.

To successfully state a claim for specific performance a plaintiff must allege: (1) a contract sufficiently definite and certain in its terms to be enforced, (2) that the contract was just and reasonable, (3) that the plaintiff has performed his side of the bargain, (4) that the promisor has failed to perform, (5) that the contract was supported by adequate consideration, and (6) the remedy at law is inadequate.  *Porporato v. Devincenzi*, 261 Cal. App. 2d 670, 675 (1968).  It has long been recognized that "specific performance will be granted only where the legal remedy is inadequate."  *Eagle Rock Entm't, Inc. v. Coming Home Prods., Inc.,* No. CV 03-571 FMC(AJWx), 2004 WL 5642002 at *17 (C.D. Cal. Sept. 1, 2004) (citation omitted).  The fact that damages may be difficult to prove or

ascertain does not require that specific performance be granted. *Wooley v. Embassy Suites,* 227 Cal. App. 3d 1520, 1535 (1991).

Here, not only does the FAC fail to allege all of the necessary elements of the claim, the Court does not consider monetary damages inadequate to compensate Plaintiff for the potential loss of the Property. [*See generally,* Doc. No. 59 at 10-11.] Furthermore, the Court is unaware of any binding precedent that would allow it to compel Wells Fargo to modify Plaintiff's mortgage to reflect the interest rate and monthly payment Plaintiff desires. Even section 2923.6 of the California Civil Code, upon which Plaintiff relies, does not create rights or obligations, or require loan servicers to modify loans. It "merely expresses the hope that lenders will offer loan modifications on certain terms." *Ibarro Ramos,* 2013 WL 12097567, at \*6 (quoting *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 222 (2010)). Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 16). Plaintiff's claim for specific performance is **DENIED WITHOUT LEAVE TO AMEND** as to all Defendants.

### L. Declaratory and Injunctive Relief Requests

Plaintiff seeks injunctive relief to prevent Defendants from enforcing the mortgage loan and conducting a foreclosure sale. [Doc. No. 22 at ¶ 224.] Additionally, Plaintiff seeks declaratory relief that he is "entitled to have all instruments filed against the Property cancelled and removed as well as to receive a set off of any alleged mortgage payments owed and attorney fees against the amount Defendant allegedly owed Plaintiff as well as other remedies he is requesting." [*Id.* at ¶ 220.]

However, "[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter,* 52 Cal. App. 2d 164, 168 (1942). A cause of action for declaratory relief is ultimately a request for relief - in order to weigh it, the court must look to its underlying claims. *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000). "A case is ripe where the essential facts establishing the right to declaratory relief have already occurred." *Id.*

The FAC does not successfully plead a substantive claim that would entitle Plaintiff to either injunctive or declaratory relief, and neither do the circumstances of this case warrant the issuance of a declaratory judgment. Accordingly, the Court **GRANTS** Defendants' motion to dismiss these claim (counts 17 and 18). Plaintiff's request for declaratory and injunctive relief claim is **DISMISSED WITHOUT LEAVE TO AMEND** insofar as it seeks to obtain declaratory and injunctive relief independent of any of Plaintiff's other claims. However, this ruling does not preclude Plaintiff from amending the FAC to plead injunctive and declaratory relief as a remedy for other viable claims.

## M. Violations of TILA and HOEPA Claims

Plaintiff alleges that Defendants violated the Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act ("HOEPA") because the 2009 loan modification he obtained from Wachovia did not contain accurate material disclosures regarding the pros and cons of adjustable rate mortgages or offer other loan products. Plaintiff does not specify if he is requesting damages, rescission or both under TILA and HOEPA. Wells Fargo argue that Plaintiff's TILA claim is barred by the applicable statute of limitations and HOEPA does not apply. CRC contends that the claim has not been pled with the requisite particularity.

TILA and HOEPA are part of the same statutory scheme that was enacted by Congress to combat predatory lending, with HOEPA applying only to "certain high risks loans involving higher interest rates and costs." *Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d 1199, 1208 (S.D. Cal. 2009). TILA requires that consumer loan documents contain detailed disclosures. *Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 703-04 (9th Cir. 1986) (citations omitted). In order to insure that the consumer is protected, TILA is strictly enforced with the right of rescission attaching regardless of whether the violation is technical, minor or major. *Id.* "HOEPA is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes of limitation as TILA." *Monreal v. Deutsche Bank Nat. Trust Co.*, 2013 WL 5727565, at *7 (S.D. Cal. Oct. 22,

2013) (quoting *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1179 (E.D. Cal. 2010)).

Under 15 U.S.C. § 1635, claims for rescission have a three-year statute of limitations. *See McOmie-Gray v. Bank of Am. Home Loans,* 667 F.3d 1325 (9th Cir. 2012). The Ninth Circuit has held that as a statute of repose, section 1635, "represents an 'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986)). Requests for damages under TILA are subject to a one-year statute of limitations that typically runs from the date of loan execution. *See* 15 U.S.C § 1640(e) (any claim under this provision must be made "within one year from the date of the occurrence of the violation."). The one-year statute of limitations for damages arising under TILA may be subject to equitable tolling if a plaintiff can prove "fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *Fed. Election Com'n v. Williams*, 104 F.3d 237, 240-241 (9th Cir. 1996). As HOEPA is an amendment of TILA, it is therefore governed by the same remedial scheme and statutes of limitation as TILA. *Monreal v. Deutsche Bank Nat. Trust Co.*, Civil Case No. 13cv00743AJB(NLS), 2013 WL 5727565, at *7 (S.D. Cal. Oct. 22, 2013) (quoting *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1179 (E.D. Cal. 2010)).

Because Section 1635(f) is a statute of repose, it extinguished Plaintiff's right to rescission on April 13, 2012, three years after the mortgage loan modification was entered into. [Doc. No. 10-3 at 10-11.] Plaintiff did not file his rescission claim until October 27, 2016, making it untimely. Similarly, TILA's one-year statute of limitations for claims for damages bars the TILA damages claim because the loan modification agreement was entered into on April 13, 2009. [*Id.*] The FAC does not allege any facts that would explain how Plaintiff was prevented from discovering, in the exercise of due diligence, the

information necessary to bring his damages claim within the one-year limitations period. *See, e.g., Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Because the same statute of limitations applies, it follows that Plaintiff's HOEPA claim also falls outside the statute of limitations periods. Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 19). To the extent Plaintiff's Violation of the TILA/HOEPA claim is one for rescission it is **DISMISSED WITH PREJUDICE** as to all Defendants. Plaintiff's damages claims under TILA and HOEPA are **DISMISSED WITH LEAVE TO AMEND** to allege facts that support equitable tolling and that HOEPA covers the mortgage loan at issue.

### N. Violation of RESPA Claim

Finally, Plaintiff alleges that "Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving." [Doc. No. 22 at ¶ 242.] Aside from this vague allegation Plaintiff does not specify what section of REPSA he believes Defendants violated. Defendants contend that the allegation fails to state a claim. The Court agrees with Defendants. Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim (Count 20). Plaintiff's violation of RESPA claim is **DENIED WITH LEAVE TO AMEND.**

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss [Doc. Nos. 24, 43-1] and ORDERS as follows:

1. The breach of the covenant of faith and fair dealing claim is DISMISSED WITH PREJUDICE;

2. The violation of California Civil Code section 2923.6 claim is DISMISSED WITH PREJUDICE;

3. The violation of California Civil Code section 2924.10 is DISMISSED WITH PREJUDICE;

4. The violation of the California and Federal Fair Debt Collection Acts claims are DISMISSED WITH PREJUDICE;

5. The breach of contract claim/promissory estoppel claim is DISMISSED WITH PREJUDICE;

6. The breach of fiduciary duty claim is DISMISSED WITH LEAVE TO AMEND;

7. The fraud claim is DISMISSED WITH LEAVE TO AMEND;

8. The promise without intent to perform claim is DISMISSED WITH LEAVE TO AMEND;

9. The negligent misrepresentation claim is DIMISSED WITH LEAVE TO AMEND;

10. The quiet title claim is DISMISSED WITH LEAVE TO AMEND;

11. The slander of title claim is DISMISSED WITH PREJUDICE;

12. The cancellation of instrument claim is DISMISSED WITH PREJUDICE;

13. The violation of business and professions code section 17200, et seq. claim is DISMISSED WITH LEAVE TO AMEND;

14. The violation of the California Deceptive Practices Act claim is DISMISSED WITH LEAVE TO AMEND;

15. The accounting claim is DISMISSED WITH LEAVE TO AMEND;

16. The specific performance claim is DISMISSED WITH PREJUDICE;

17. The declaratory relief claim is DISMISSED;

18. The injunctive relief claim is DISMISSED WITH PREJUDICE;

19. The violation of TILA & HOEPA claims are DISMISSED WITH LEAVE TO AMEND insofar as they seek damages; and

20. The violation of RESPA claim is DISMISSED WITH LEAVE TO AMEND.

//

//

//

//

If Plaintiff chooses to file an amended complaint, he must do so **no later than November 13, 2017.** Plaintiff must identify all claims he asserts against Defendants and clearly set forth the necessary factual allegations to support the elements of each claim as against each Defendant.

It is **SO ORDERED**.

Dated: October 27, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge